## The Commercial Bank *versus* Nathaniel F. Cunningham.

A mortgage given *bonâ fide* as security for future advances to be made by the mortga-gee to the mortgagor, is a valid security for such advances, as against subsequent purchasers.

A note secured by a mortgage of real estate duly recorded, was given by a partner-ship to a bank, and the bank at the same time executed and delivered to the mort-gagors an instrument which set forth, that such note was held as collateral security for the payment or discharge of certain other notes and liabilities of the mortga-gors to the bank, and that the note and mortgage were to remain for the purposes aforesaid so long as the bank should hold any note against the mortgagors and so long as they should be under liabilities of any sort to the bank ; but such instru-ment was not recorded. It was *held*, that the mortgage was not fraudulent as against subsequent purchasers; that new notes given to the bank, whether in re-newal of the original notes or not, were covered by the mortgage, notwithstanding a third person had become a partner with the mortgagors and the new notes were made or indorsed in the name of the new firm.

Where an insolvent debtor assigns his property for the benefit of such of his creditors as become parties to the assignment, and thereby release their claims, and a divi-dend ·s received by one of such creditors, it must be applied ratably to all his claims against the debtor, as well to those upon which other parties are liable or which are otherwise secured, as to those which are not so secured.

In such case, the release by the creditor extinguishes all notes made by the debtor ; but it does not discharge the maker of notes merely indorsed by him ; not even if they were made for his accommodation, if the creditor had no notice of this fact.

The circumstance, that the indorser of a discounted note was a director in the bank by which it was discounted, will not be deemed constructive notice to the bank, that the note was made for his accommodation.

Writ of entry to recover seisin of two undivided third parts of certain lands and tenements in Shirley, of which the demandants alleged that they were seised in fee and in mortgage.

The parties stated a case.

On January 31st, 1833, Joseph and Joseph B. Edgarton mortgaged the demanded premises to the demandants, to se-cure the payment of a joint and several promissory note of that date, made by the mortgagors for the sum of $13,000, payable in two years, with interest. At the same time, the demandants executed and delivered to the mortgagors an in-strument under seal, whereby they acknowledged and declared that the note was lodged with them as collateral security for the payment of certain other notes made by the mortgagors in the name of the firm of Edgarton, Whitcomb & Co., and

ot liabilities for others which the mortgagors were under to the demandants. The instrument further declared, that when the mortgagors should cease to be debtors of the demandants, or under any liabilities for others to the demandants, the note for the sum of $ 13,000 should be delivered up to them and the mortgage be discharged, but that such note and mortgage should remain for the purposes aforesaid so long as the demandants should hold any note against the mortgagors, and so long as the mortgagors should be under liabilities of any sort to them. The mortgage was duly recorded. The writing which was executed by the·demandants, and which expressed the only consideration of the note, was not recorded.

At the time when such note and mortgage were made, the mortgagors were partners, transacting business under the firm of Edgarton, Whitcomb & Co., the other partner, Adolphus Whitcomb, having previously deceased. As the notes and drafts given by the mortgagors to the demandants, and those upon which the mortgagors were liable for others, at the time of the execution and delivery of the note and mortgage, became due, they were paid or renewed by some of the parties thereto, either wholly or in part; but the indebtedness of the mortgagors to the demandants, was never less than the sum of $ 13,000. About May 24th, 1833, the mortgagors took Joel Priest into partnership with them, and from that time their negotiable paper was signed and indorsed in the name of Edgarton, Priest & Co.

It further appeared, that Edgarton, Priest & Co. and William Parker, by whom most of such notes were made or indorsed under the firm of William Parker & Co., finding themselves so far insolvent as to render it expedient to stop payment, mutually agreed to assign their property for the benefit of such · of their respective creditors as should become parties to their assignments and release their respective claims ; but neither of the parties so assigning executed the assignment made by the other.

In pursuance of this agreement, Parker, on or about January 23d, 1834, assigned his property, and the demandants became parties to his assignment, and thereby " released and forever discharged all their debts, dues, claims and demands against the said William Parker."

On or about January 24th, 1834, Edgarton, Priest & Co. assigned their property to the tenant and Israel Longley, and, amongst other things, conveyed to them the demanded premises in due form.

Among the notes and drafts upon which the demandants claimed to hold the mortgagors, either as promisors or acceptors, were several which were made for the accommodation of W. Parker & Co., but the demandants had no notice or information that they were so made, unless the Court should be of opinion, that such notice or information resulted from the transactions between the parties and the demandants, and from the circumstance, that Parker was a director of the Commercial bank from the time when it commenced operations until his failure.

On December 10th, 1834, the assignees of W. Parker & Co. paid to the demandants the sum of $6442·32, to be applied to their claims against him under the assignment; and thereupon, the demandants acknowledged the receipt thereof as the amount due to them under such assignment as preferred creditors, " according to the first dividend of 20 per cent declared by said assignees on the 28th of November, 1835." The demandants alleged, that they had applied such sum towards the payment of claims and demands held by them against Parker & Co., under the assignment, and in no part to their claims against the firm of Edgarton, Priest & Co., and contended, that they had a right so to do, they having received no other directions from the assignees of Parker & Co. as to its specific application, than what are contained in, or implied from such assignment and receipt, and the other facts stated.

The Court were to determine whether the demandants were entitled to recover upon the mortgage or not; and if so, the tenant was to be defaulted, without prejudice to his filing a bill in equity in the same manner as if the foregoing agreement had never been made ; and the Court were to render such judgment and make such order in the case, as to them might seem meet.

*H. H. Fuller,* for the demandants, to the point, that, in the absence of fraud, the mortgage was valid as against the tenant, and covered as well new liabilities as renewals, cited 2 Powell

on Mortg. (Rand's ed.) 533, note ; *United States* v. *Hooe*, 3 Cranch, 73 ; *Shirras* v. *Caig*, 7 Cranch, 34 ; *Conrad* v. *Atlantic Ins. Co.* 1 Peters's Sup. C. R. 448 ; *James* v. *Morey*, 2 Cowen, 292 ; *Brinkerhoff* v. *Lansing*, 4 Johns. Ch. R. 73 ; *Atkinson* v. *Maling*, 2 T. R. 462 ; *Lysle* v. *Ducomb*, 5 Binney, 589 ; *Badlam* v. *Tucker*, 1 Pick. 398 ; *Watkins* v. *Hill*, 8 Pick. 522 ; *Adams* v. *Wheeler*, 10 Pick. 199 ; that the release of Parker, under his assignment, did not discharge Edgarton, Priest & Co., their assignments being contemporaneous, and by mutual consent, *Gloucester Bank* v. *Worcester*, 10 Pick. 528 ; *Parsons* v. *Gloucester Bank*, 10 Pick. 533 ; *Sargent* v. *Appleton*, 6 Mass. R. 85 ; and that the sum received by the demandants from the assignees might be applied by them to other claims against W. Parker & Co. to the exclusion of those secured by the mortgage, *Field* v. *Holland*, 6 Cranch, 27 ; *Brewer* v. *Knapp*, 1 Pick. 337 ; *Dedham Bank* v. *Chickering*, 4 Pick. 314 ; *Pattison* v. *Hull*, 9 Cowen, 747, 773, note.

*B. Rand* and *Fiske*, for the tenant, to the point, that the mortgage was to be considered wholly ineffectual and void as against the tenant, who was a *bonâ fide* creditor or purchaser, it not setting forth or giving notice of the real debt, cited 2 Powell on Mortg. (Rand's ed.) 533, note ; *United States* v. *Hooe*, 3 Cranch, 73 ; *Dickerson* v. *Tillinghast*, 4 Paige's Ch. R. 215 ; and that the notes received by the demandants in renewal or payment of the original notes, discharged the original debt, especially as a new party had been introduced by the mortgagors, *Maneely* v. *M'Gee*, 6 Mass. R. 143 ; *Thacher* v. *Dinsmore*, 5 Mass. R. 299 ; *Chapman* v. *Durant*, 10 Mass. R. 47 ; *Wiseman* v. *Lyman*, 7 Mass. R. 286 ; *Pintard* v. *Tackington*, 10 Johns. R. 104.

WILDE J. afterward drew up the opinion of the Court. The demandants' title is derived from Joseph Edgarton and Joseph B. Edgarton, the former owners of the demanded premises, under a mortgage deed from them, made and executed January 31st, 1833, to secure the payment of large debts due to the demandants, and also to secure any future demands they might have against the Edgartons, so long as

Commercial
Bank
*v.*
Cunning-
ham.

they should be under any liabilities of any sort to the de-mandants.

It is objected on the part of the tenant, that this mortgage deed was fraudulent against subsequent purchasers ; or if not as to existing debts at the time the mortgage was made, yet that it was not a valid security for any demand which accrued to the demandants after that time. Neither of these objections, as it seems to us, can be supported.

It is admitted, that the demands intended to be secured were *bonâ fide* demands. It does not appear, nor indeed is it alleged, that there was any secret trust between the parties ; but on the contrary it clearly appears from the facts agreed, that there was a good and adequate consideration for the conveyance, and that it was made for the purposes appearing on the face of the conveyance, and of the agreement of the demandants accompanying it, which fully explains the understanding and the intention of the parties. It is no proof of fraud or concealment, that the latter was omitted to be recorded, for it was not necessary that it should be ; and there is no reason for supposing, that it was omitted for the purpose of concealing any part of the transaction.

There being, therefore, no proof nor indication of any fraudulent concealment as to the extent of the mortgage, the agreement that the mortgaged property should stand bound for future discounts and advances, is valid and unexceptionable. A greater part of the newly contracted debts were but renewals, or substitutes, for the old, and did not increase the amount due on the mortgage, which is less now than it would have been if only the old notes had now remained unsatisfied. But without relying on this circumstance, we think it clear, that a mortgage made *bonâ fide* for the purpose of securing future debts, expected to be contracted, in the course of dealings between the parties, is a good and valid security. And so are the authorities. *United States* v. *Hooe*, 3 Cranch, 73 ; *Shirras* v. *Caig*, 7 Cranch, 34 ; *James* v. *Morey*, 2 Cowen, 292 ; *Brinkerhoff* v. *Lansing*, 4 Johns. Ch. R. 73.

Considering then the demandants' title valid, several questions remain as to the amount now due on the mortgage. The demandants claim, that the drafts and notes made or indorsed

by Edgarton, Priest & Co., are covered and secured by the mortgage ; and we think this claim is well founded. The two Edgartons are parties to these notes and drafts ; and it is no objection, that Priest also is a joint debtor with them. It appears, however, that the most of these were indorsed by William Parker & Co. ; and a few were made by them, and indorsed by Edgarton, Priest & Co. The defendant contends, that the latter were discharged from their liability by the plaintiffs' release to Parker & Co., which was given on their assigning their property for the payment of their debts.

This claim is undoubtedly well founded as to all those notes and drafts which were signed by said Parker & Co., as makers, or principal promisors ; for the release to the principal promisor is equivalent to payment of the debt, and consequently discharges the indorser. But it is very clear, that the receiving part payment from the indorser and releasing him, cannot operate as a discharge of the principal debtor from the balance due. It is however agreed, that some of the notes indorsed by W. Parker & Co., were made for their accommodation, and the proceeds thereof went to their use. But the demandants deny, that they had at the time of the discount of such notes, or when the release was made, any notice of this fact. It has been argued, that as to these notes Parker & Co. are to be considered as the principal debtors, and that a discharge to them must operate as a discharge of the other parties to the notes. In support of this argument the counsel for the tenant rely on the case of *Saxton* v. *Peat*, 2 Campb. 185, and on *Collott* v. *Haigh*, 3 Campb. 281. These cases were decided by Lord *Ellenborough* at *nisi prius ;* but the correctness of the decisions has been very much doubted ; and they were overruled in the case of *Fentum* v. *Pococke*, 5 Taunt. 192. In *Kerrison* v. *Cooke*, 3 Campb. 362, *Gibbs* C. J. says ; " I am sorry the term, accommodation bill, ever found its way into the law, or that parties were allowed to get rid of the obligations they profess to contract by putting their names to negotiated paper." In *Price* v. *Edmunds*, 10 Barn. & Cressw. 582, *Bayley* J. suggests, though he does not decide the point, that a party by signing a note as joint maker, renders himself subject to all the liabilities of a joint maker. And

Commercial
Bank
*v.*
Cunning
ham.

*Park* J. says, that the decision in *Fentum* v. *Pococke*, where it was held, that the acceptor of an accommodation bill was not discharged by giving time to the drawer, was good sense and good law.

From these cases it appears, that the weight of authority is against the decisions in *Saxton* v. *Peat*, and *Collott* v. *Haigh*. But it is not incumbent on us to decide between these conflicting authorities in the present case. For we think there is no proof that the plaintiffs had notice, that these notes were accommodation notes. The knowledge of Parker, although he was one of the directors of the Commercial bank, is no proof of notice to that corporation, especially as he was a party to all these contracts, whose interest might be opposed to that of the corporation. To admit the stockholders or directors of a bank to subject it to liability, or to affect its interests, unless they have authority so to do expressly by its charter, would be attended with the most dangerous consequences, and is certainly not sanctioned by any authority. *Hallowell and Augusta Bank* v. *Hamlin*, 14 Mass. R. 180. The plaintiffs, therefore, are entitled to recover the balances due on the notes in question against the Edgartons and Priest, and by the terms of the mortgage they are entitled to a conditional judgment therefor, together with their other claims.

To ascertain these balances, the amount paid out of the goods and effects of Parker & Co. must be applied distributively and proportionally to all the demands proved by the plaintiffs, or admitted under the assignment. Their claim to apply these payments to other claims they had against Parker & Co. to the exclusion of the claims secured by the mortgage, is altogether unfounded and inadmissible. This is not a case in which the debtor or creditor has the right to make the application of any payment, for the application is made by law according to the circumstances and justice of the case.

*Judgment for the plaintiffs, nisi.*